# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALFREDO MONTANEZ, | : | |
| | : | |
| Plaintiff | : | Civil No. 1:12-CV-1530 |
| | : | |
| v. | : | (Magistrate Judge Carlson) |
| | : | |
| YORK CITY, PENNSYLVANIA, | : | |
| et al., | : | |
| | : | |
| Defendants | : | |

## MEMORANDUM OPINION AND ORDER

Now pending before the Court is defendants City of York and the York City Police Department's motion to dismiss plaintiff's complaint. (Doc. 10.) For the following reasons, the motion will be granted, and this action will be dismissed with respect to the moving defendants without prejudice to plaintiff moving for leave to file an amended complaint within 30 days to address the deficiencies identified in this memorandum.

## I. BACKGROUND

Plaintiff initiated this action by filing a complaint on August 7, 2012.[1] (Doc.

---

[1] In his brief opposing the motion to dismiss, Plaintiff claims that he actually filed his complaint on August 6, 2012, but it was not docketed on the Court's electronic filing system until the following day. Plaintiff represented that he was attaching as an exhibit a copy of his receipt bearing the date August 6, 2012, but this receipt has never been submitted to the Court. As will be noted, the date of the filing is potentially important in this case, because the allegations in the

1.) In the complaint, plaintiff, a resident of the City of York, claims that he was arrested by unidentified York City Police Officers on August 6, 2010. (Id. at ¶ 14.) Plaintiff alleges that after he was handcuffed, he was struck in the chest by an unnamed individual officer. (Id. at ¶ 16.) Plaintiff claims that when he was struck by the officer, he was not resisting arrest, or otherwise failing to comply with the officer's instructions. (Id. at ¶ 17.) Plaintiff alleges that the assaulting officer was an officer with the York City Police Department, and that this officer had "received extensive training in the proper arrest of an individual who appears to have committed a crime." (Id. at ¶ 13.) In addition to these allegations, plaintiff claims that the York City Police Department is the police department for the City of York, and that the department employed the officer alleged to have assaulted plaintiff during the course of his arrest. (Id. at ¶¶ 9-11.)

Plaintiff claims that following his assault and arrest, he was charged with a number of crimes, including multiple firearms and drug offenses, and receiving stolen property.[2] Plaintiff alleges that he has experienced physical and psychological injuries as a direct and proximate cause of the assault – an assault that plaintiff claims

---

complaint indicate that the claim arose on August 6, 2010, and the claims in this case are subject to a two-year statute of limitations period.

[2] The complaint is silent regarding the eventual disposition of these criminal charges.

was "video recorded by a citizen of York City, Pennsylvania and placed on You-Tube." (Id. at ¶¶ 22-25.)

Plaintiff brings claims against the unnamed officers, the City of York, and the York City Police Department under 42 U.S.C. § 1983 for alleged violations of the United States Constitution; a claim for money damages for unspecified violations of the Pennsylvania Constitution, and a claim for assault and battery under Pennsylvania common law. Plaintiff seeks compensatory and punitive damages from all defendants.

On November 2, 2012, the City of York and the York City Police Department moved to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that plaintiff failed to state a claim upon which relief can be granted. Specifically, the moving defendants argue that plaintiff's claims are barred by the applicable statute of limitations; that the York City Police Department is not a legal entity capable of being sued; that plaintiff has failed to make sufficient allegations to support a claim for municipal liability; and that plaintiff's claim for damages under the Pennsylvania Constitution fail as a matter of law.

Plaintiff has filed a brief opposing the motion, arguing generally that his claim was timely filed and sufficiently pleaded, and arguing alternatively that he should be given an opportunity to amend the complaint if the Court concludes that it fails to

3

state a claim as a currently drafted.

For the reasons that follow, we will grant the motion to dismiss, but do so without prejudice to plaintiff filing a motion for leave to amend the complaint in a final effort to set forth factual allegations sufficient to state a claim against the City of York.[3]

## II.  STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a court to dismiss a complaint that fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When ruling upon a motion to dismiss under Rule 12(b)(6), a court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)). Although the court is generally constrained in its review to the facts alleged in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items

---

[3] As we explain, Plaintiff's claims against the York City Police Department fail as a factual and legal matter, because the police department is merely an arm of the City of York, and therefore is not a proper defendant separate and apart from the city itself. If Plaintiff seeks leave to amend the complaint, he should refrain from including the York City Police Department as a separate defendant from the City of York.

4

appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require that a complaint provide "the defendant notice of what the . . . claim is and the grounds upon which it rests." Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). The plaintiff must allege facts that, if true, demonstrate a plausible right to relief. See Fed. R. Civ. P. 8(a) (providing that a complaint must include a short and plain statement of the claim showing that the pleader is entitled to relief:); Twombly, 550 U.S. at 555 (holding that plaintiffs are required to allege facts sufficient to "raise a right to relief above the speculative level").

In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 678. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 679. Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 678.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

The foregoing legal benchmarks guide our analysis, and compel us to find that plaintiff's complaint falls far short of what is required under Rule 8 of the Federal

Rules of Civil Procedure with respect to claims asserted against the City of York and the York City Police Department.

## III. DISCUSSION

### A. The York City Police Department is Not a Separate Entity Subject to this Lawsuit

As a threshold matter, we observe that plaintiff's claims against the York City Police Department fail because the police department is nothing more than a municipal subunit of the City of York, and is not a separate corporate entity that is capable of being sued. Courts within the Third Circuit have consistently held that municipal police departments, like the York City Police Department, cannot be sued in conjunction with municipalities, "because the police department is merely an administrative arm of the local municipality, and is not a separate judicial entity." DeBellis v. Kulp, 166 F. Supp. 2d 255, 264 (E.D. Pa. 2001); see also Stukey v. York City Police Dep't, No. Civ. A. 4:CV-05-2354, 2006 WL 58990, *1 (M.D. Pa. Jan. 9, 2006) ("We note that the York City Police Department is not a separate sueable entity."); Gremo v. Karlin, 363 F. Supp. 2d 771, 780 (E.D. Pa. 2005); Open Inns, Ltd. v. Chester County Sheriff's Dep't, 24 F. Supp. 2d 410, 417 (E.D. Pa. 1998); Johnson v. City of Erie, 834 F. Supp. 873, 878-79 (W.D. 1993).

Plaintiff has not responded to this argument or these cases in any way, and we agree with the moving defendants that plaintiff's claims against the York City Police Department must be dismissed because the department is no more than a municipal arm of the City of York, and not a separate entity capable of being sued for damages in this action.

### B. Plaintiff Cannot Maintain a Claim for Damages Under the Pennsylvania Constitution

Plaintiff also purports to seek damages for alleged violations of the Pennsylvania Constitution. Defendants move to dismiss this claim on the grounds that the plaintiff does not have a private right of action for violations of the Pennsylvania Constitution.

Although it does not appear that the Supreme Court of Pennsylvania has decided whether the Pennsylvania Constitution provides a private cause of action for damages based upon alleged state constitutional violations, state intermediate courts and federal courts have almost universally found that plaintiffs may not maintain claims for damages for alleged violations of the Pennsylvania constitution. See Heffner v. Murphy, 866 F. Supp. 2d 358, 374 (M.D. Pa. 2012); Alvarez v. City of Phila., No. Civ. A. 07-0493, 2008 WL 4347529, at *13 (E.D. Pa. Sept. 23, 2008); R.H.S. v. Allegheny County Dep't of Human Servs., Office of Mental Health, 936

A.2d 1218, 1225-26 (Pa. Commw. Ct. 2007) (quoting <u>Jones v. City of Phila.</u>, 890 A.2d 1188, 1208 (Pa. Commw. Ct. 2006)); <u>Underwood v. Beaver County Children and Youth Servs.</u>, No. Civ. A. 03-1475, 2007 WL 3034069, at *2 (W.D. Pa. Oct. 7, 2007); <u>Ryan v. Gen. Mach. Products</u>, 277 F. Supp. 2d 585, 595 (E.D. Pa. 2003). In short, it is apparent that:

> Pennsylvania law does not include a statutory equivalent to 42 U.S.C. § 1983, which provides a cause of action for damages because of a federal constitutional violation. Moreover, the question of whether the Pennsylvania Constitution provides a cause of action for damages remains unanswered. <u>Underwood v. Beaver Cnty. C.Y.S.</u>, Civ. A. No. 03-1475, 2005 U.S. Dist. LEXIS 23012, at *7 (W.D.Pa. Oct. 7, 2005). Nevertheless, a majority of other district courts in this circuit that have decided the issue have concluded that money damages are not available for claims under the Pennsylvania Constitution. See <u>Ryan v. General Machine Prods., 227</u> F.Supp.2d 585, 595 (E.D.Pa.2003) (stating that federal courts in the Court of Appeals for the Third Circuit have concluded that there is no right to money damages under the Pennsylvania Constitution); see also <u>Douris v. Schweiker</u>, 229 F.Supp.2d 391, 405 (E.D.Pa.2002); <u>Lees v. West Greene Sch. Dist.</u>, 632 F.Supp. 1327, 1335 (W.D.Pa.1986). Although monetary relief is unavailable, "other remedies, such as declaratory or injunctive relief ... are ... remedies under the Pennsylvania Constitution." <u>Jones v. City of Philadelphia</u>, 890 A.2d 1188, 1215-16 (Pa.Commw.Ct.2006) (discussing the lack of a cause of action for damages under the Pennsylvania Constitution and declining, "without benefit of legislative action," to create such a cause of action.).

<u>O'Hara v. Hanley</u>, No. 08-1393, 2009 WL 2043490, 9 (W.D.Pa. July 8, 2009). Thus, the state constitution simply may not provide legal footing for any damages claims like those made by the plaintiffs in this case. In the face a rising tide of legal

9

decisions holding that a plaintiff has no private right of action for alleged violations of the Pennsylvania Constitution, plaintiff makes no argument, and provides no contrary legal authority. Upon consideration of the foregoing legal authority, and finding the reasoning of these decisions persuasive, we conclude that plaintiff's claims for damages for alleged violations of the Pennsylvania Constitution are not cognizable, and must be dismissed.

### C. Plaintiff Has Failed to Allege Sufficient Facts to Support a Claim for Municipal Liability Against the City of York

Although plaintiff claims that the unnamed officer who allegedly assaulted him on August 6, 2010, had "received extensive training in the proper arrest of an individual who appears to have committed a crime," (Compl., at ¶ 13.), plaintiff also purports to bring a claim for municipal liability against the City of York for the officer's conduct, presumably on the grounds that the City of York maintained policies or practices that facilitated the assault alleged in this case, or otherwise because the City of York failed adequately to train and supervise its police officers. Remarkably, however, plaintiff has included no allegations of any kind that can reasonably be read to state a claim for municipal liability, or to allege that the municipality maintained customs, policies, or practices that caused or facilitated the alleged torts in this case, or any other facts to explain the basis for the plaintiff's

municipal liability claim. As currently stated, therefore, the complaint falls far short of what is required to state a claim for municipal liability under Monell v. Department of Social Services of the City of New York, 436 U.S. 658 (1978) ("Monell").

In Monell, the Supreme Court held that a municipality may be held liable under 42 U.S.C. § 1983 for a constitutional injury that directly resulted from a municipality's policy, custom, or practice. Id. at 695. Accordingly, a Monell claim seeks to impose municipal liability for a constitutional injury that was causally connected to a municipal policy, custom, or practice. See id.; see also Carreno v. City of Newark, 834 F. Supp. 2d 217, 231 (D.N.J. 2011).

"Under Monell, a municipality cannot be subjected to liability solely because injuries were inflicted by its agents or employees." Jiminez v. All American Rathskeller, Inc., 503 F.3d 247, 249 (3d Cir. 2007). Instead, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Id. (quoting Monell, 436 U.S. at 694). It is essential to a Monell claim that there be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation" in order to establish municipal liability. City of Canton v. Harris, 489 U.S. 378, 385 (1989).

Guided by these threshold principles, the Third Circuit Court of Appeals has

explained that there are "three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983:"

> The first is where the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy. The second occurs where no rule has been announced as policy but federal law has been violated by an act of the policymaker itself. Finally, a policy or custom may also exist where the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.

Natale v. Camden County Corr. Facility, 318 F.3d 575, 584 (3d Cir.2003) (internal quotation marks and citations omitted). Subsequently, the appeals court provided further guidance regarding the ways in which a government policy or custom may be established:

> We have also observed that a government policy or custom can be established in two ways. See Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir.1990). The Plaintiffs may establish a government policy by showing that a "decisionmaker possess[ing] final authority to establish municipal policy with respect to the action" issued an official statement of policy. Pembaur v. City of Cincinnati, 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). The Plaintiffs may establish that a course of conduct constitutes a "custom" when, though not authorized by law, "such practices of state officials [are] so permanent and well settled" that they operate as law. Monell, 436 U.S. at 690, 98 S.Ct. 2018. In either instance, the Plaintiffs have the burden of showing

that a government policymaker is responsible by action or acquiescence for the policy or custom. Andrews, 895 F.2d at 1480. We have also held that, at a minimum, the government must act with deliberate indifference to the purported constitutional deprivation in order to ground liability. San Filippo v. Bongiovanni, 30 F.3d 424, 445 (3d Cir.1994).

Jiminez, 503 F.3d at 250. In cases where a plaintiff is predicating a Monell claim on an alleged failure to train officers or other employees, the Third Circuit has further explained:

> a municipality's failure to train police officers only gives rise to a constitutional violation when that failure amounts to deliberate indifference to the rights of persons with whom the police come into contact. City of Canton, Ohio v. Harris, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). We have held that a failure to train, discipline or control can only form the basis for section 1983 municipal liability if the plaintiff can show both contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents and circumstances under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate. See Bonenberger v. Plymouth Township, 132 F.3d 20, 25 (3d Cir.1997).

Montgomery v. De Simone, 159 F.3d 120, 126-27 (3d Cir. 1998). It is "only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality . . . can a city be liable for such a failure under § 1983." Harris, 489 U.S. at 389. Thus, where Monell claims are based upon an alleged failure to train officers, the municipality's training program must be so inadequate that "in light of the duties

assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy [of the current training] so likely to result in the violation of constitutional rights, that the policy makers of the city can reasonably be said to have been deliberately indifferent to the need." Id. at 390.

The Supreme Court has recently reaffirmed these guiding principles which define municipal civil rights liability based upon a failure to train or oversee police. In Connick v. Thompson, – U.S.– , 131 S.Ct. 1350, 1359 (2011), the court described the parameters of municipal liability in the following terms:

> A municipality or other local government may be liable . . .if the governmental body itself "subjects" a person to a deprivation of rights or "causes" a person "to be subjected" to such deprivation. See Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 692 (1978). But, under § 1983, local governments are responsible only for "their *own* illegal acts." Pembaur v. Cincinnati, 475 U.S. 469, 479(1986) . . . . They are not vicariously liable under § 1983 for their employees' actions. . . . Plaintiffs who seek to impose liability on local governments under § 1983 must prove that "action pursuant to official municipal policy" caused their injury. Monell, 436 U.S., at 691. Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law. . . . . These are "action[s] for which the municipality is actually responsible." Pembaur, supra, at 479–480. In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983. A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train. See Oklahoma City v. Tuttle, 471 U.S. 808, 822–823 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training' " is "far

more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell* "). To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." . . . . Only then "can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983. . . . " '[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." . . . . Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program.

Id.(some citations deleted).

With these guidelines in mind, we find that plaintiff has simply failed to allege facts sufficient to establish a claim for Monell violations relating to his alleged assault by an unidentified York City police officer. Instead, it appears that plaintiff has brought claims against the municipality simply on a theory that the municipality has *respondeat superior* liability for the conduct of an individual police officer as a matter of law. As the foregoing legal discussion makes clear, this is simply not so. Plaintiff's complaint is devoid of allegations that could reasonably support a claim for municipal liability on the grounds that the City of York maintained customs, policies or practices that caused or facilitated the conduct alleged in the complaint. Finding no allegations in the complaint sufficient to support a claim for municipal liability under Monell, we are constrained to dismiss this claim against the City of

York, although we will do so without prejudice to plaintiff's right to move for leave to submit an amended complaint that adequately sets forth the factual basis for a Monell claim against the city.

### D. Statute of Limitations

Finally, defendants argue that plaintiff's claims are untimely, having been filed just one day after the two-year limitations period applicable to the claims in this case ran. Because we find that plaintiff's claims fail on the pleadings alone, we decline the moving defendants' invitation to make legal conclusions regarding whether this lawsuit was timely filed in the first place.

The defendants observe that plaintiff alleged that he was assaulted on August 6, 2007, but neglected to file a lawsuit until August 7, 2012. Observing further that the claims in this case are all subject to a two-year statute of limitations period, the moving defendants submit that the claims are untimely by one day. Plaintiff responds by asserting that he actually filed this lawsuit on August 6, 2012, and he represents that he has a receipt from this Court that will establish that fact. Plaintiff represented that he was attaching that receipt as an exhibit to his brief, (Doc. 15.), but it appears that he neglected to do so because no such exhibit appears on the docket.

Federal Rule of Civil Procedure 8(c) classifies the statute of limitations as an affirmative defense that must be pled in an answer to the complaint. Fed. R. Civ. P.

8(c). In addition, Rule 12(b) requires defendants to assert all defenses within an answer except for those specifically enumerated within the rule. Fed. R. Civ. P. 12(b). These rules, in turn, do not require a plaintiff to allege specific facts regarding the timing of an offense, and Rule 12(b) does not expressly authorize the pre-answer assertion of a limitations defense. Id.; Wilson v. McVey, 579 F. Supp. 2d 685, 689 (M.D. Pa. 2008). Nevertheless, it is clear that a district court may dismiss a complaint as time-barred if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002) (quoting Hanna v. U.S. Veterans' Admin. Hosp., 514 F.2d 1092, 1094 (3d Cir. 1974)); see also Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.1 (3d Cir. 1994) ("While the language of Fed. R. Civ. P. 8(c) indicates that a statute of limitations defense cannot be used in the context of a Rule 12(b)(6) motion to dismiss, exception is made where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly applies on the face of the pleading.").

Civil rights claims are subject to the state statute of limitations applicable to personal injury actions. See O'Connor v. City of Newark, 440 F.3d 125, 127 (3d Cir. 2006). In Pennsylvania, this limitations period is two years. See Pa. Cons. Stat. Ann. § 5524(7); see also Disabled in Action of Pa. v. Se. Pa. Transp. Auth., 539 F.3d 199,

208 (3d Cir. 2008). "[U]nder federal law, which governs the accrual of section 1983 claims, the limitations period begins to run from the time when the plaintiff knows or has reason to know of the injury which is the basis of the section 1983 action." Montgomery v. De Simone, 159 F.3d 120, 126 (3d Cir. 1998) (quoting Genty v. Resolution Trust Corp., 937 F.2d 899, 919 (3d Cir. 1991)).

Pennsylvania law recognizes that " 'in some circumstances, although the right to institute suit may arise, a party may not, despite the exercise of due diligence, reasonably discover that he has been injured.' " Haugh v. Allstate Ins. Co., 322 F.3d 227, 231 (3d Cir. 2003) (quoting Crouse v. Cyclops Indus., 745 A.2d 606, 611 (Pa. 2000)). In such cases, the discovery rule will serve to toll "the running of the applicable statute of limitations until the complaining party knows or reasonably should know that he has been injured and that his injury has been caused by another party's conduct." Crouse, 745 A.2d at 611.

In addition to the discovery rule, there may be some limited cases where principles of equitable tolling will apply to stop the statute of limitations from running. Oshiver, 38 F.3d at 1387. In general, equitable tolling may be appropriate where: (1) a defendant actively misleads a plaintiff regarding his cause of action; (2) a plaintiff has been prevented from asserting a claim as a result of other extraordinary circumstances; or (3) a plaintiff has timely asserted his claims, but in the wrong

forum. Lake v. Arnold, 232 F.3d 360, 370 n.9 (3d Cir. 2000). In the absence of "intentional inducement or trickery by the defendant, a statute of limitations should be tolled only in the 'rare situation where equitable tolling is demanded by sound legal principles as well as the interests of justice.'" Albright v. Keystone Rural Health Center, 320 F. Supp. 2d 286, 290 (M.D. Pa. 2004) (quoting U.S. v. Midgley, 142 F.3d 174, 179 (3d Cir. 1998)).

In this case, it appears substantially doubtful that the continuing violations doctrine or the discovery rule would have any application, and it also appears questionable that the limited exceptions provided by principles of equitable tolling would apply. However, we find it unnecessary to consider whether plaintiff's claims were timely filed or, if not, whether they should be tolled, and we decline to speculate about the potential application of these exceptions. We will instead confine our decision to the pleading shortcomings we have identified, which clearly compel the dismissal of the complaint as currently drafted.

In the event plaintiff seeks leave to amend the complaint in order to address these shortcomings, and if plaintiff believes he has support for his assertion that the complaint was in fact filed timely on August 6, 2012, contrary to what appears on the docket of this case, he is urged to submit a copy of the receipt as an exhibit to his motion for leave to amend so that this matter may be more readily resolved.

## IV. **ORDER**

Accordingly, for the foregoing reasons, IT IS HEREBY ORDERED THAT the defendants' motion to dismiss (Doc. 10.) is GRANTED. The complaint is dismissed with respect to plaintiff's claims against the City of York and the York City Police Department, without prejudice to plaintiff seeking leave within 20 days from the date of this order to submit a motion for leave to amend the complaint, together with a copy of the proposed amended complaint that addresses the pleading deficiencies we have identified in this memorandum.

So ordered this 17th day of December 2012.

*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge