## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ALFREDO MONTANEZ,** | : | **Civil No. 1:12-CV-1530** |
| | : | |
| **Plaintiff** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **v.** | : | |
| | : | |
| **YORK CITY, PENNSYLVANIA,** | : | |
| **et al.,** | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM OPINION

### I.      Statement of Facts and of the Case

Plaintiff initiated this action by filing a complaint on August 7, 2012.  (Doc.

1)  In the complaint, plaintiff, a resident of the City of York, claimed that he was

arrested by unidentified York City Police Officers on August 6, 2010.  (Id. at ¶ 14.)

Plaintiff alleged that after he was handcuffed, he was struck in the chest by an

unnamed individual officer.  (Id. at ¶ 16.)  Plaintiff claimed that when he was struck

by the officer, he was not resisting arrest, or otherwise failing to comply with the

officer's instructions.  (Id. at ¶ 17.)  Plaintiff alleged that the assaulting officer was

an officer with the York City Police Department, and that this officer had "received

extensive training in the proper arrest of an individual who appears to have committed a crime." (Id. at ¶ 13.)  In addition to these allegations, plaintiff claimed that the York City Police Department is the police department for the City of York, and that the department employed the officer alleged to have assaulted plaintiff during the course of his arrest.  (Id. at ¶¶ 9-11.)  Plaintiff claimed that following his assault and arrest, he was charged with a number of crimes, including multiple firearms and drug offenses, and receiving stolen property.  Plaintiff alleged that he has experienced physical and psychological injuries as a direct and proximate cause of the assault – an assault that plaintiff claims was "video recorded by a citizen of York City, Pennsylvania and placed on You-Tube." (Id. at ¶¶ 22-25.)  The plaintiff initially brought claims against an unnamed police officer, the City of York, and the York City Police Department under 42 U.S.C. § 1983 for alleged violations of the United States Constitution; a claim for money damages for unspecified violations of the Pennsylvania Constitution, and a claim for assault and battery under Pennsylvania common law.

Following the filing of this complaint, counsel entered appearances for the defendants.  While Attorney Gonzales limited his notice of appearance to the City of York, and the York Police Department, (Doc. 5), Attorney Hoyt, the York City

solicitor, entered an appearance on behalf of all defendants, including the unnamed

police officer described in Montanez's complaint.  (Doc. 3)

On October 19, 2012, approximately 70 days after the filing of the complaint,

the parties submitted a join case management plan in this case.  (Doc. 6)  For the

defendants, that case management plan clearly suggested that counsel had

communicated with the officers who participated in Montanez's arrest, since the

report decsribed the arrest from the perspective of these unnamed officers, stating:

> On August 6, 2010, officers from the York City Police Department were
> dispatched to the 700 block of East Market St. for a report of a man with
> a gun.  Officers observed the plaintiff who matched the description of
> the suspect, exited their unmarked vehicle and ordered plaintiff to the
> ground.  Plaintiff ignored these commands, and ran away.  Plaintiff
> tripped and fell on the curb where he was tackled by one of the officers.
> At that time, a gun fell from plaintiff's pants.  Plaintiff attempted to
> escape the grasp of the officer and began to actively resist.  Another
> officer drive-stunned plaintiff with his tazer to gain control of plaintiff
> and to stop him from fighting with the officers.  It took several officers
> to gain control of plaintiff and place him in handcuffs.  As officers were
> walking plaintiff to a waiting vehicle for transportation back to
> headquarters, plaintiff stepped into the right side of an officer and wiped
> his bloody forehead onto the officer's uniform.  That officer pushed
> plaintiff away from him using his elbow and forearm in a rapid
> movement and in reaction to plaintiff's attempt to wipe blood and bodily
> fluids onto the officer.

(Doc. 6, p. 3)

On November 2, 2012, the City of York and the York City Police Department

moved to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of

Civil Procedure.  (Doc. 10)  We granted this motion, dismissing the complaint with respect to the City of York, without prejudice to the filing of an amended complaint by the plaintiff.  (Docs. 18, 24.)  On June 11, 2013, we also clarified this ruling on a motion for reconsideration, stating that the plaintiff was still permitted to pursue claims against the still unidentified York police officers who allegedly assaulted him. (Doc. 24)

In the meanwhile plaintiff's counsel made what he described as "numerous request[s]" for the identity of this police officer from defense counsel, requests which were unavailing, as defense counsel declined to provide the name of this officer. (Doc. 25)  Indeed, defense counsel acknowledged that plaintiff's counsel sought this information regarding the identity of the police officer involved in this incident in late 2012, while a motion to dismiss was pending in this case, and again requested this information informally in April, 2013.  (Doc. 39)  Notably, in these communications defense counsel did not claim confusion regarding the identity of the unnamed officer; instead counsel indicated that they knew the identity of the officer but simply declined to disclose this information to plaintiff's counsel.  Despite receiving these repeated informal requests from the plaintiff's attorney, defense counsel had concluded as a tactical matter that they would not comply with these requests until

they receive a formal discovery demand from the plaintiff. (Id.) It is uncertain if this position was clearly communicated and understood by plaintiff's counsel.

After several months of stalemate on this issue, in order to resolve the simple issue of identifying this defendant the Court then convened a conference with counsel. (Doc. 27) At this conference it became apparent to the Court that defense counsel knew the identity of the officer but had made a tactical decision not to provide that information, except in response to a specific discovery demand compelling this disclosure. Accordingly, on September 11, 2013, we issued an order directed the plaintiff to propound discovery demands identifying the officer allegedly involved in this incident, and further instructing defense counsel to promptly identify this unnamed officer for the plaintiff. (Doc. 28)

Following this exchange of discovery the plaintiff filed a motion to amend his complaint to specifically identify the police officer that he alleged assaulted him, Sergeant Roger Nestor. (Docs. 35 and 37) The defendant has opposed this motion for leave to amend, (Doc. 39), arguing that the amendment is untimely and improper. The defendant makes this argument, even though it has been represented without contradiction that plaintiff informally requested this information regarding the identity of the officer involved in this incident on a number of occasions from defense

counsel, who declined to respond to these informal requests for a period of months, contributing to the delays experienced here.

This motion is fully briefed by the parties, (Docs. 39 and 40), and is, therefore, ripe for resolution.

For the reasons set forth below, the motion to amend will be granted.

**II.    Discussion**

Rule 15(a) of the Federal Rules of Civil Procedure provides that "leave to amend shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a). However, because the plaintiff's proposed amendment adds claims against Sergeant Nestor  that would be filed approximately three  years after the events giving rise to those claims, and beyond the period of the statute of limitations, see Wilson v. Garcia, 471 U.S. 261, 280 (1985); Garvin v. University of Pittsburgh, 354 F.3d 215, 220 (3d Cir. 2003), Montanez may only amend his complaint pursuant to Rule 15(c), which permits a plaintiff, in specific circumstances, to amend a complaint "as if it had been filed at the time of the original complaint."  Singletary v. Pa. Dept. of Corr., 266 F.3d 186, 189 (3d Cir. 2001).

Pursuant to its terms, Rule 15(c)(1) applies in three situations:

(1)    **When an Amendment Relates Back.**  An amendment to a pleading relates back to the date of the original pleading when:

6

> (A)    the law the provides the applicable statute of limitations allows relation back;
>
> (B)    the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading; or
>
> (C)    the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
>> (i)    received such notice of the action that it will not be prejudiced in defending on the merits; and
>>
>> (ii)   knew or should have known that the action against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c).

The United States Court of Appeals for the Third Circuit has explained the application of the rule as follows:

> The Rule is written in the conjunctive, and courts interpret [15(c)(1)(C)] as imposing three conditions, all of which must be met for a successful relation back of an amended complaint that seeks to substitute newly named defendants. [First, the claim against the newly named defendants must have arisen out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading]. The second and third conditions are set out in [15(c)(1)(C)(i) and (ii)], respectively, and must be met "within the period provided by Rule 4(m) for service of the summons and complaint," Fed. R. Civ. P. [15(c)(1)(C)], which is "120 days after the filing of the complaint," Fed. R. Civ. P. 4(m). The second condition is that the newly named party must have "received such notice of the institution of the action [within the 120 day period] that the party

> will not be prejudiced in maintaining a defense on the merits." Fed. R.
> Civ. P. [15(c)(1)(C)(i)]. <u>Urrutia [v. Harrisburg County Police Dept.</u>, 91
> F.3d 451, 458 (3d Cir. 1996)] states that this condition "has two
> requirements, notice and the absence of prejudice, each of which must
> be satisfied." 91 F.3d at 458. The third condition is that the newly
> named party must have known, or should have known, (again, within the
> 120 day period) that "but for a mistake" made by the plaintiff
> concerning the newly named party's identity, "the action would have
> been brought against" the newly named party in the first place. Fed. R.
> Civ. P. [15(c)(1)(C)(ii)].

<u>Singletary</u>, 266 F.3d at 194 (some citations omitted).

Applying these benchmarks, we find at the outset that the first requisite of Rule

15(c) is met here since the amendment asserts a claim against Sergeant Nestor that

arose out of the conduct, transaction, or occurrence set out – or attempted to be set

out – in the original pleading, as required by Rule 15(c).

We note that there are two other conditions which also must be met under Rule

15(c) before an amended complaint can relate-back to the date of the initial filing.

First, the newly named party must have "received such notice of the institution of the

action [within the 120 day period prescribed for service of the original complaint] that

the party will not be prejudiced in maintaining a defense on the merits." Fed. R. Civ.

P., Rule 15(c)(1)(C)(i). In addition there is yet another condition prescribed by Rule

15(c), that the newly named party must have known, or should have known, that "but

for a mistake" made by the plaintiff concerning the newly named party's identity, "the

action would have been brought against" the newly named party in the first place. Fed. R. Civ. P. Rule 15(c)(1)(C)(ii).

Turning to Rule 15(c)(1)(C)(ii)'s requirement that the newly named party must have known, or should have known, that "but for a mistake" made by the plaintiff concerning the newly named party's identity, "the action would have been brought against" the newly named party in the first place, we conclude that it is clear that Sergeant Nestor would have been named in the plaintiff's original complaint but for persistent and profound confusion on the part of the plaintiff regarding the true identity of the officer that he alleged assaulted him. Therefore, this element of the relation-back doctrine is satisfied here. See Singletary v. Pennsylvania Dep't of Corr., 266 F.3d 186, 200–01 (3d Cir.2001) (noting that a "mistake" can be when a plaintiff lacked knowledge of the identity of a John Doe defendant when the original complaint was filed); Moreno v. City of Pittsburgh, CIV.A. 12-615, 2013 WL 3816666 (W.D. Pa. July 22, 2013).

The sole remaining issue then is whether the newly named party, Sergeant Nestor, "received such notice of the institution of the action [within the 120 day period prescribed for service of the original complaint] that the party will not be prejudiced in maintaining a defense on the merits," as required by Rule15(c)(1)(C)(i). In this regard, "Rule 15(c)(3) notice does not require actual service of process on the

party sought to be added; notice may be deemed to have occurred when a party who has some reason to expect his potential involvement as a defendant hears of the commencement of litigation through some informal means.  See Varlack v. SWC Caribbean, Inc., 550 F.2d 171, 175 (3d Cir.1977) (holding that a person who the plaintiff sought to add as a defendant had adequate notice under 15(c)(3) when, within the relevant period, the person by happenstance saw a copy of the complaint naming both the place where he worked and an 'unknown employee' as a defendant, which he knew referred to him); see also Berndt v. Tennessee, 796 F.2d 879, 884 (6th Cir.1986) (notice need not be formal); Eakins v. Reed, 710 F.2d 184, 187–88 (4th Cir.1983) (same); Kirk v. Cronvich, 629 F.2d 404, 407–08 (5th Cir.1980) (same).  At the same time, the notice received must be more than notice of the event that gave rise to the cause of action; it must be notice that the plaintiff has instituted the action.  See Bechtel v. Robinson, 886 F.2d 644, 652 n. 12 (3d Cir.1989)."  Singletary v. Pennsylvania Dep't of Corr., 266 F.3d 186, 195 (3d Cir. 2001).

In practice:

[T]here are two possible methods by which the district courts could impute notice under Rule 15(c)(3).  The first is the "shared attorney" method, which is based on the notion that when the originally named party and the parties sought to be added are represented by the same attorney, "the attorney is likely to have communicated to the latter party that he may very well be joined in the action."  Singletary, 266 F.3d at 196.  The second is the "identity of interest" method, and is related to

10

the shared attorney method. "Identity of interest generally means that the parties are so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other." Id. at 197 (quoting 6A Charles Alan Wright et al., Federal Practice & Procedure § 1499, at 146 (2d ed.1990)).

Garvin v. City of Philadelphia, 354 F.3d 215, 222-23 (3d Cir. 2003).

"The 'shared attorney' method of imputing Rule [15(c)(1)(C)] notice is based on the notion that, when an originally named party and the party who is sought to be added are represented by the same attorney, the attorney is likely to have communicated to the latter party that he may very well be joined in the action." Singletary, 266 F.3d at 196. The "fundamental issue" is whether the attorney's "later relationship with the newly named defendant gives rise to the inference that the attorney, within the 120 day period, had some communication or relationship with, and thus gave notice of the action to, the newly named defendant." Id.

Here we find that Sergeant Nestor can be imputed to have had notice of this lawsuit through his shared counsel, City Solicitor Hoyt, who entered his appearance on behalf of both the City of York, and the unnamed police officer identified in the plaintiff's initial complaint, on August 15, 2013, eight days after the filing of the complaint. This imputed notice through shared counsel is further bolstered by the detailed factual narrative of this incident, written from the perspective of Sergeant

11

Nestor, and provided by defense counsel in the case management plan submitted to the Court on October 17, 2012, some 70 days after the complaint was filed. That factual narrative, which describes from the police officers' perspective both what Sergeant Nestor did, and his subjective impressions of the plaintiff's conduct, ("That officer pushed plaintiff away from him using his elbow and forearm in a rapid movement and in reaction to plaintiff's attempt to wipe blood and bodily fluids onto the officer"), in our view "gives rise to the inference that the attorney, within the 120 day period, had some communication or relationship with, and thus gave notice of the action to, the newly named defendant." Id. Indeed, in a case such as this it has been held that notice may be imputed where shared counsel files pleadings which make factual averments that reflected matters known by the previously unnamed defendant; counsel's representations relating to factual matters that are peculiarly within the knowledge of the unnamed party permit an inference of communications between counsel and the previously unnamed party. See Moreno v. City of Pittsburgh, CIV.A. 12-615, 2013 WL 3816666 (W.D. Pa. July 22, 2013). Furthermore, we note that defense counsel's response to the plaintiff's initial awkward efforts to identify the officer are, in our view, also instructive. Counsel did not deny knowing who the officer was or dispute having communications with the officer regarding what the

officer was alleged to have done; instead, counsel simply declined to voluntarily identify the officer.

We also conclude on the unique facts of this case that notice can be imputed to Sergeant Nestor through the "identity of interest" method.  In this context: " 'Identity of interest generally means that the parties are so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other.' Id. at 197 (quoting 6A Charles Alan Wright et al., Federal Practice & Procedure § 1499, at 146 (2d ed.1990))." Garvin v. City of Philadelphia, 354 F.3d 215, 222-23 (3d Cir. 2003).  While it has been held that "absent other circumstances that permit the inference that notice was actually received, a non-management employee . . . does not share a sufficient nexus of interests with his or her employer so that notice given to the employer can be imputed to the employee for Rule [15(c)(1)(C)] purposes."   Singletary v. Pennsylvania Dep't of Corr., 266 F.3d at 200, in this case we find that other circumstances exist which permit an inference that notice was actually received. These other circumstances include:  (1) the shared legal representation through Attorney Hoyt's entry of an appearance on behalf of both the City and the unnamed officer; (2) Sergeant Nestor's supervisory status as a police sergeant, a supervisory position which suggests a closer identity of interests between the parties than a mere

13

employer-employee relationship; and (3) the fact that the case management plan submitted by the city appeared to adopt the sergeant's personal perspective on this incident, signifying a commonality of interests in this litigation.  Finally, we note that the parties' shared interest in this litigation is, in our view, reflected in the tactical choices of counsel for the city to refuse repeated informal requests by plaintiff's counsel to voluntarily identify the unnamed officer.  While defense counsel was certainly entitled to make this tactical choice, the litigative choice suggests that defense counsel were acting in the common interests of both the city, and the unnamed defendant, and underscore the identity of interests held by these parties.

Further, we find that plaintiff's counsel timely pursued the issue of identifying this unnamed officer, albeit in an ineffectual fashion, making numerous informal requests for this information before belatedly turning at our direction to formal discovery processes.  Thus, in our view, the instant case is not like those cases relied upon by the defendant in his opposition to this motion to amend, which frequently noted a complete failure by counsel to timely attempt to discover the identity of the previously unnamed defendants.  See generally, Garvin v. City of Philadelphia, 354 F.3d 215, 222-23 (3d Cir. 2003)  Given what are acknowledged as the efforts of plaintiff's counsel to obtain this information we decline the defendant's invitation to find that plaintiff's counsel was dilatory.  We also decline any suggestion that defense

counsel acted in bad faith in failing to disclose the identity of the police officer. Instead, we ascribe the delay in obtaining the identity of the officer to a mutual misunderstanding between counsel:  Plaintiff's counsel sincerely believed that defense counsel would informally provide him this information.  Defense counsel, however, had resolved not to release this information absent the compulsion of formal discovery.

Finally, we note that "Rule 15(c)(1)(C)(i) also requires the Court to determine whether the newly named defendants have been prejudiced.  Brever v. Federated Equity Mgmt. Co. of Pa., 233 F.R.D. 429, 435 (W.D.Pa.2005) (Cercone, J.) ('the notice inquiry is designed to eliminate prejudice that would result from having to assemble evidence and construct a defense after a claim has become stale')." Moreno v. City of Pittsburgh, CIV.A. 12-615, 2013 WL 3816666 (W.D. Pa. July 22, 2013). When we consider this bedrock animating principle under Rule 15(c), we find that Sergeant Nestor would not be unfairly prejudiced by being identified as the previously unnamed police officer in this action.  In this regard, we note what is apparently an undisputed fact in this litigation:  This police encounter was videotaped and publicly displayed on You Tube.  (Doc. 1, ¶25)  In this setting, where the disputed events are captured on video and can be revealed through a cursory Internet search, the prejudice that could result from having to assemble evidence and construct

a defense after a claim has become stale, <u>Brever v. Federated Equity Mgmt. Co. of Pa.</u>, 233 F.R.D. 429, 435 (W.D.Pa.2005), seems minimal.

Accordingly, for the foregoing reasons, finding that the requirements prescribed by Rule 15(c) are met here, the plaintiff's motion to amend the complaint, (Doc. 37), will be GRANTED.

An appropriate order will issue.

*/S/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

Date: February 20, 2014