## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ALFREDO MONTANEZ,** | : | **Civil No. 1:12-CV-1530** |
| | : | |
| **Plaintiff** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **v.** | : | |
| | : | |
| **YORK CITY, PENNSYLVANIA,** | : | |
| **et al.,** | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM OPINION

### I.    Statement of Facts and of the Case

This matter comes before the Court on a motion to reconsider a decision authorizing the Plaintiff to file an amended complaint which named a new Defendant, Sergeant Nestor, and related back to the date of the Plaintiff's initial filing.  For the reasons set forth below, we will deny this request.

Plaintiff initiated this action by filing a complaint on August 7, 2012.  (Doc. 1.)  In the complaint, Plaintiff, a resident of the City of York, claimed that he was arrested by unidentified York City Police Officers on August 6, 2010.  (Id. at ¶ 14.) Plaintiff alleged that after he was handcuffed, he was struck in the chest by an

unnamed individual officer.  (Id. at ¶ 16.)  Plaintiff claimed that when he was struck by the officer, he was not resisting arrest, or otherwise failing to comply with the officer's instructions.  (Id. at ¶ 17.)  Plaintiff alleged that the assaulting officer was an officer with the York City Police Department, and that this officer had "received extensive training in the proper arrest of an individual who appears to have committed a crime." (Id. at ¶ 13.)  In addition to these allegations, Plaintiff claimed that the York City Police Department is the police department for the City of York, and that the department employed the officer alleged to have assaulted Plaintiff during the course of his arrest.  (Id. at ¶¶ 9-11.)  Plaintiff claimed that following his assault and arrest, he was charged with a number of crimes, including multiple firearms and drug offenses, and receiving stolen property.  Plaintiff alleged that he has experienced physical and psychological injuries as a direct and proximate cause of the assault – an assault that Plaintiff claims was "video recorded by a citizen of York City, Pennsylvania and placed on You-Tube." (Id. at ¶¶ 22-25.)  The Plaintiff initially brought claims against an unnamed police officer, the City of York, and the York City Police Department under 42 U.S.C. § 1983 for alleged violations of the United States Constitution; a claim for money damages for unspecified violations of the Pennsylvania Constitution, and a claim for assault and battery under Pennsylvania common law.

Following the filing of this complaint, counsel entered appearances for the Defendants. While Attorney Gonzales limited his notice of appearance to the City of York, and the York Police Department, (Doc. 5.), Attorney Hoyt, the York City solicitor, entered an appearance on behalf of all defendants, including the unnamed police officer described in Montanez's complaint. (Doc. 3.)

On October 19, 2012, approximately 70 days after the filing of the complaint, the parties submitted a join case management plan in this case. (Doc. 6.) For the Defendants, that case management plan clearly suggested that counsel had communicated with the officers who participated in Montanez's arrest, since the report described the arrest from the perspective of these unnamed officers, stating:

> On August 6, 2010, officers from the York City Police Department were dispatched to the 700 block of East Market St. for a report of a man with a gun. Officers observed the Plaintiff who matched the description of the suspect, exited their unmarked vehicle and ordered Plaintiff to the ground. Plaintiff ignored these commands, and ran away. Plaintiff tripped and fell on the curb where he was tackled by one of the officers. At that time, a gun fell from Plaintiff's pants. Plaintiff attempted to escape the grasp of the officer and began to actively resist. Another officer drive-stunned Plaintiff with his tazer to gain control of Plaintiff and to stop him from fighting with the officers. It took several officers to gain control of Plaintiff and place him in handcuffs. As officers were walking Plaintiff to a waiting vehicle for transportation back to headquarters, Plaintiff stepped into the right side of an officer and wiped his bloody forehead onto the officer's uniform. That officer pushed Plaintiff away from him using his elbow and forearm in a rapid movement and in reaction to Plaintiff's attempt to wipe blood and bodily fluids onto the officer.

3

(Doc. 6, p. 3.)

On November 2, 2012, the City of York and the York City Police Department moved to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 10.) We granted this motion, dismissing the complaint with respect to the City of York, without prejudice to the filing of an amended complaint by the plaintiff. (Docs. 18, 24.) On June 11, 2013, we also clarified this ruling on a motion for reconsideration, stating that the plaintiff was still permitted to pursue claims against the still unidentified York police officers who allegedly assaulted him. (Doc. 24.)

In the meanwhile Plaintiff's counsel made what he described as "numerous request[s]" for the identity of this police officer from defense counsel, requests which were unavailing, as defense counsel declined to provide the name of this officer. (Doc. 25.) Indeed, defense counsel acknowledged that Plaintiff's counsel sought this information regarding the identity of the police officer involved in this incident in late 2012, while a motion to dismiss was pending in this case, and again requested this information informally in April, 2013. (Doc. 39.) Notably, in these communications defense counsel did not claim confusion regarding the identity of the unnamed officer; instead counsel indicated that they knew the identity of the officer but simply declined to disclose this information to Plaintiff's counsel. Despite receiving these

4

repeated informal requests from the Plaintiff's attorney, defense counsel had concluded as a tactical matter that they would not comply with these requests until they receive a formal discovery demand from the Plaintiff. (Id.) It is uncertain if this position was clearly communicated and understood by Plaintiff's counsel.

After several months of stalemate on this issue, in order to resolve the simple issue of identifying this Defendant the Court then convened a conference with counsel. (Doc. 27.) At this conference it became apparent to the Court that defense counsel knew the identity of the officer but had made a tactical decision not to provide that information, except in response to a specific discovery demand compelling this disclosure. Accordingly, on September 11, 2013, we issued an order directed the Plaintiff to propound discovery demands identifying the officer allegedly involved in this incident, and further instructing defense counsel to promptly identify this unnamed officer for the Plaintiff. (Doc. 28.)

Following this exchange of discovery the Plaintiff filed a motion to amend his complaint to specifically identify the police officer that he alleged assaulted him, Sergeant Roger Nestor. We granted this motion, (Doc. 42.), finding that the criteria established by Rule 15(c)(1) for amendment of pleadings that relate back to the date of the Plaintiff's initial filing were satisfied. In particular, we found at the outset that the first requisite of Rule 15(c) was met here since the amendment asserted a claim

against Sergeant Nestor that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading, as required by Rule 15(c).

We noted that there were two other conditions which also must be met under Rule 15(c) before an amended complaint can relate-back to the date of the initial filing. First, the newly named party must have "received such notice of the institution of the action [within the 120 day period prescribed for service of the original complaint] that the party will not be prejudiced in maintaining a defense on the merits." Fed. R. Civ. P., Rule15(c)(1)(C)(i). In addition there is yet another condition prescribed by Rule 15(c), that the newly named party must have known, or should have known, that "but for a mistake" made by the Plaintiff concerning the newly named party's identity, "the action would have been brought against" the newly named party in the first place. Fed. R. Civ. P. Rule 15(c)(1)(C)(ii).

Turning to Rule 15(c)(1)(C)(ii)'s requirement that the newly named party must have known, or should have known, that "but for a mistake" made by the Plaintiff concerning the newly named party's identity, "the action would have been brought against" the newly named party in the first place, we found that it was clear that Sergeant Nestor would have been named in the Plaintiff's original complaint but for persistent and profound confusion on the part of the Plaintiff regarding the true identity of the officer that he alleged assaulted him. Therefore, this element of the

6

relation-back doctrine was satisfied here.  See Singletary v. Pennsylvania Dep't of
Corr., 266 F.3d 186, 200–01 (3d Cir.2001) (noting that a "mistake" can be when a
plaintiff lacked knowledge of the identity of a John Doe defendant when the original
complaint was filed);  Moreno v. City of Pittsburgh, CIV.A. 12-615, 2013 WL
3816666 (W.D. Pa. July 22, 2013).

We also concluded that the newly named party, Sergeant Nestor,  "received
such notice of the institution of the action [within the 120 day period prescribed for
service of the original complaint] that the party will not be prejudiced in maintaining
a defense on the merits," as required by Rule15(c)(1)(C)(i).  We found that Sergeant
Nestor could be imputed to have had notice of this lawsuit through his shared
counsel, City Solicitor Hoyt, who entered his appearance on behalf of both the City
of York, and the unnamed police officer identified in the Plaintiff's initial complaint,
on August 15, 2013, eight days after the filing of the complaint.  This imputed notice
through shared counsel is further bolstered by the detailed factual narrative of this
incident, written from the perspective of Sergeant Nestor, and provided by defense
counsel in the case management plan submitted to the Court on October 17, 2012,
some 70 days after the complaint was filed.  That factual narrative, which described
from the police officers' perspective both what Sergeant Nestor did, and his
subjective impressions of the Plaintiff's conduct, ("That officer pushed Plaintiff away

from him using his elbow and forearm in a rapid movement and in reaction to Plaintiff's attempt to wipe blood and bodily fluids onto the officer"), in our view "gives rise to the inference that the attorney, within the 120 day period, had some communication or relationship with, and thus gave notice of the action to, the newly named defendant." <u>Id.</u> Indeed, in a case such as this it has been held that notice may be imputed where shared counsel files pleadings which make factual averments that reflected matters known by the previously unnamed Defendant; counsel's representations relating to factual matters that are peculiarly within the knowledge of the unnamed party permit an inference of communications between counsel and the previously unnamed party. <u>See</u> <u>Moreno v. City of Pittsburgh</u>, CIV.A. 12-615, 2013 WL 3816666 (W.D. Pa. July 22, 2013).

We also concluded on the unique facts of this case that notice can be imputed to Sergeant Nestor through the "identity of interest" method. In this context: " 'Identity of interest generally means that the parties are so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other.' <u>Id</u>. at 197 (quoting 6A Charles Alan Wright et al., Federal Practice & Procedure § 1499, at 146 (2d ed.1990))." <u>Garvin v. City of Philadelphia</u>, 354 F.3d 215, 222-23 (3d Cir. 2003). While it has been held that "absent other circumstances that permit the inference that notice was

actually received, a non-management employee . . . does not share a sufficient nexus of interests with his or her employer so that notice given to the employer can be imputed to the employee for Rule [15(c)(1)(C)] purposes." Singletary v. Pennsylvania Dep't of Corr., 266 F.3d at 200, in this case we find that other circumstances exist which permit an inference that notice was actually received. These other circumstances include: (1) the shared legal representation through Attorney Hoyt's entry of an appearance on behalf of both the City and the unnamed officer; (2) Sergeant Nestor's supervisory status as a police sergeant, a supervisory position which suggests a closer identity of interests between the parties than a mere employer-employee relationship; and (3) the fact that the case management plan submitted by the city appeared to adopt the sergeant's personal perspective on this incident, signifying a commonality of interests in this litigation.

We also noted that the parties' shared interest in this litigation is, in our view, reflected in the tactical choices of counsel for the city to refuse repeated informal requests by Plaintiff's counsel to voluntarily identify the unnamed officer. While defense counsel was certainly entitled to make this tactical choice, the litigative choice suggested that defense counsel were acting in the common interests of both the city, and the unnamed Defendant, and underscore the identity of interests held by these parties.

Finally, we noted that "Rule 15(c) (1)(C)(I) also requires the Court to determine whether the newly named Defendants have been prejudiced.  <u>Brever v. Federated Equity Mgmt. Co. of Pa.</u>, 233 F.R.D. 429, 435 (W.D.Pa.2005) (Cercone, J.) ('the notice inquiry is designed to eliminate prejudice that would result from having to assemble evidence and construct a defense after a claim has become stale')." <u>Moreno v. City of Pittsburgh</u>, CIV.A. 12-615, 2013 WL 3816666 (W.D. Pa. July 22, 2013).  When we considered this bedrock animating principle under Rule 15(c), we found that Sergeant Nestor would not be unfairly prejudiced by being identified as the previously unnamed police officer in this action.  In this regard, we note what is apparently an undisputed fact in this litigation:  This police encounter was videotaped and publicly displayed on You Tube.  (Doc. 1, ¶25.)  In this setting, where the disputed events are captured on video and can be revealed through a cursory Internet search, the prejudice that could result from having to assemble evidence and construct a defense after a claim has become stale, <u>Brever v. Federated Equity Mgmt. Co. of Pa.</u>, 233 F.R.D. 429, 435 (W.D.Pa.2005), seemed minimal.

The Defendant has now filed a motion asking us to reconsider this ruling. (Doc. 45.)  This motion suggested that this ruling was erroneous because we had erred as a factual matter in imputing notice of this lawsuit to Sergeant Nestor.  While the Defendant advanced this argument, there was a notable omission in this pleading.

The central issue here is whether we erred in imputing notice of this lawsuit to Sergeant Nestor. However, the motion to reconsider was not accompanied by any affidavit or declaration from Sergeant Nestor attesting that he had not, in fact, received notice of this lawsuit.

During our March 14, 2014 case management conference with counsel we noted that the motion to reconsider was not accompanied by any declaration from Sergeant Nestor that he had not received timely notice of this lawsuit, and invited the Defendant to supplement the record on this pivotal issue, if it was possible to do so. The time for filing a reply brief which could have supplemented the record in this fashion has now passed, and we have not received any further submission on the question we deem crucial to this motion–Sergeant Nestor's actual notice of this lawsuit.

Given this factual backdrop, we will deny this motion to reconsider.

## II. <u>Discussion</u>

The legal standards that govern motions to reconsider are both clear, and clearly compelling. "The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." <u>Harsco Corp.</u> <u>v. Zlotnicki</u>, 779 F.2d 906, 909 (3d Cir. 1985). Typically such a motion should only be granted in three, narrowly defined circumstances, where there is either: "(1) [an]

intervening change in controlling law, (2) availability of new evidence not previously

available, or (3) need to correct a clear error of law or prevent manifest injustice".

Dodge v. Susquehanna Univ., 796 F.Supp. 829, 830 (M.D. Pa. 1992 ).  As the United

States Court of Appeals for the Third Circuit has aptly observed:

> "The purpose of a motion for reconsideration ... is to correct manifest
> errors of law or fact or to present newly discovered evidence." Max's
> Seafood Café, 176 F.3d at 677 (quoting Harsco Corp. v. Zlotnicki, 779
> F.2d 906, 909 (3d Cir.1985)).  "Accordingly, a judgment may be altered
> or amended if the party seeking reconsideration shows at least one of the
> following grounds: (1) an intervening change in the controlling law; (2)
> the availability of new evidence that was not available when the court
> granted the motion for summary judgment; or (3) the need to correct a
> clear error of law or fact or to prevent manifest injustice." Id. (citation
> omitted).
>
> Howard Hess Dental Laboratories Inc. v. Dentsply Intern., Inc., 602 F.3d
> 237, 251 (3d Cir. 2010).

Thus, it is well-settled that a mere disagreement with the court does not

translate into the type of clear error of law which justifies reconsideration of a ruling.

Dodge, 796 F.Supp. at 830.  Furthermore, "[b]ecause federal courts have a strong

interest in the finality of judgments, motions for reconsideration should be granted

sparingly." Continental Casualty Co. v. Diversified Indus., Inc., 884 F.Supp. 937,

943 (E.D. Pa. 1995).  Moreover, it is evident that a motion for reconsideration is not

a tool to re-litigate and reargue issues which have already been considered and

disposed of by the court. Dodge, 796 F.Supp. at 830.  Rather, such a motion is

appropriate only where the court has misunderstood a party or where there has been a significant change in law or facts since the court originally ruled on that issue.  <u>See Above the Belt, Inc. v. Mel Bohannon Roofing, Inc.</u>, 99 F.R.D. 99, 101 (E.D. Va. 1983).

In this case, the gravamen of this motion to reconsider is the Defendant's claim that we erred in finding that notice of this lawsuit could be imputed to Sergeant Nestor, a core requirement prescribed by Rule 15(c).  Recognizing the question of notice as a crucial issue in our inquiry, and observing that Sergeant Nestor had not denied receiving notice, we invited the Defendant to supplement the record on this pivotal issue, if it was possible to do so.

The defense has not acted upon this invitation and in the absence of such proof we cannot conclude that the Defendant has shown "the need to correct a clear error of law or fact or to prevent manifest injustice."  <u>Howard Hess Dental Laboratories Inc. v. Dentsply Intern., Inc.</u>, 602 F.3d 237, 251 (3d Cir. 2010).  Therefore, we will decline the invitation to re-visit our determination that it was fair to impute notice of this litigation to Sergeant Nestor, and will deny this motion.

### III.   **Conclusion**

Accordingly, for the foregoing reasons, the Defendant's motion to reconsider,

(Doc. 45) our order granting the Plaintiff's motion to amend the complaint will be

DENIED.

An appropriate order will issue.


*/S/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge


Date:  April 4, 2014

14