## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Alfredo Montanez, | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | Case No. 12-cv-1530 |
| | : | |
| York City, Pennsylvania; The York City | : | |
| Police Department; and Unknown Police | : | |
| Officer | : | |
| Defendants. | : | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT, SERGEANT ROGER NESTOR'S MOTION FOR SUMMARY JUDGMENT

### I.    INTRODUCTION AND PROCEDURAL HISTORY

Alfredo Montanez ("Plaintiff") initiated this lawsuit by filing a Complaint on August 7, 2012, against the City of York, the York City Police Department and "Unknown Police Officer".  Plaintiff's claims against the City of York and the York City Police Department were dismissed on December 17, 2012.

Plaintiff filed an Amended Complaint, on October 3, 2014. Plaintiff's Amended Complaint named Sergeant Roger Nestor ("Sergeant Nestor") as the "Unknown Police Officer", and set forth claims against Defendant, Sergeant Nestor for excessive force under the United States and the Pennsylvania Constitution (Count I) and state tort claims for assault and battery (Count II). *See* Plaintiff's Complaint, attached as Exhibit A, ¶¶3-18.

Discovery has been completed and this matter is ripe for Summary Judgment.

Defendant, Sergeant Roger Nestor, now moves to dismiss Plaintiff's claims.

## II.   STATEMENT OF FACTS

### A.   Background

Plaintiff is an individual currently residing at SCI-Graterford for convictions arising out of this matter.

Defendant, Sergeant Roger Nestor is presently employed by the York City Police Department in the capacity of Sergeant. *See* Affidavit of Sergeant Roger Nestor, attached as Exhibit B, ¶1. On August 6, 2010, the date of the incident in question, Defendant was also employed as a Sergeant for the York City Police Department. Exhibit B, ¶2.

Although Plaintiff has been arrested four times in the City of York, he does not recall any contact with Defendant. *See* Plaintiff's Deposition, attached as Exhibit C, 9:23-10:1; 10:2-5. Furthermore, Plaintiff has no recollection of Defendant's appearance and cannot describe him. *Id.*, 10:6-10:11.

### B.   Incident at issue

On August 6, 2010, Plaintiff went to Degen's bar, located at 743 East Market Street, York, PA 17403. *Id.*,14:1-12. Furthermore, at that time Plaintiff was armed with a stolen loaded hand gun that he bought off the streets. Exhibit C, 15:7-14

Plaintiff testified that he was drinking hard alcohol all night until he became "drunk." Exhibit C, 15:2-5; 16:5-11. He was also under the influence of marijuana. *Id.*, 14:20-23.

After Plaintiff became intoxicated, he went outside of the bar. *Id.*, 17:13-17. While outside, Plaintiff spoke with other patrons of the bar and stated "I want to pop someone, I want to pop someone so fucking bad!" Police Report, attached as Exhibit D.

Defendant, while working as shift supervisor, in full uniform, responded with other members of the York City Police Department to the 700 block of East Market Street for a subject with a gun call involving Plaintiff (Incident # 10036895). Exhibit B, ¶3. Plaintiff does not "remember too much of what happened, but [he] assumed someone called the cops 'cause they showed up." Exhibit C, 17:23-18:3.

Once the police arrived, Plaintiff attempted to flee the area. *Id.*, 19:15-20:8. He testified he had a gun on his waist. *Id.* The officers immediately recognized the gun on Plaintiff's person and started to scream "gun and stuff." *Id.,* 20:22-24.

Plaintiff resisted the arrest. Exhibit C, 26:22-27:2; Exhibit D; Citizens Complaint Investigation, attached as Exhibit E. When the Defendant responded to the area, he witnessed Plaintiff fighting with officers. Exhibit B, ¶4. As a result of resisting, Plaintiff had scratches and abrasions on his head. Exhibit C, 26:22-27:2.;

37:1-3.  As more officers arrived, Plaintiff was eventually handcuffed. Exhibit B, ¶6.

After Plaintiff was handcuffed, he was brought to his feet. Defendant then approached and stood next to Mr. Montanez, and began to check with the other officers to see if they were all right and who was to be filing the charges. *Id.*, ¶8.

At this same time, Defendant noticed Plaintiff look at him under his eyebrows. *Id.*, ¶9.  Plaintiff then stepped into Defendant's right chest / shoulder area and bumped him with his head wiping his bloody forehead on the Defendant's uniform.  *Id.*, ¶10. Plaintiff wiping blood on Defendant's person constituted an imminent danger to his health and safety. *Id.*, ¶11. Specifically, Defendant stated under oath that contact and transfer of blood and body fluids are real and constant threats to officer safety in today's law enforcement field and are taken very seriously. *Id.*, ¶12. Moreover, officers are trained that Hepatitis C is a serious threat and that it is a chronic disease spread through contact with a person's blood. *Id.*, ¶13.

Accordingly, in order to prevent Plaintiff from wiping his blood on Defendant's person, Sergeant Nestor applied reasonable force. *Id.*, ¶14. This force constituted pushing Plaintiff away from Defendant's person and telling Plaintiff to "stay off me" in order for Defendant to avoid contact with Plaintiff's bodily fluids.

*Id.*, ¶15. Plaintiff did not fall or exhibit any injuries from the force applied. *Id.*, ¶16.

Plaintiff does not recall anything after being handcuffed.  Plaintiff testified that after he was apprehended by the police, "everything got blurry from there" and that he "don't remember too much after that." Exhibit C, 20:22-21:2.  He further testified that "they cuffed me, and that's – that was all I really remember right there" *Id.*, 27:23-24 and "I don't remember too much after I got handcuffed" *Id.*, 30:14-15

Significantly, however, Plaintiff admitted under oath that he could not recall a single incident of force being used on him after he was handcuffed. *Id.*, 34:10-15, 48:9-18.

Plaintiff was then transported to the hospital, where he reported no medical problems and explicitly told the medical staff that he was "all right." *Id.*, 36:11-13. Furthermore, on the date of his arrest, Plaintiff did not make any complaints regarding the conduct of Defendant or any other officer. Exhibit B, ¶19; Exhibit E.

After he was arrested, Plaintiff was charged with the following:

1) Receiving stolen property, 18§3925§§A;
2) Persons not to possess, use, manufacture, control, sell or transfer firearms, 18§6105§§A1;
3) Firearms not to be carried without a license, 18§6106§§A1;
4) Resisting arrest or other law enforcement, 18§5104;
5) Possession of Marijuana, 35§780-113(a)(31); and
6) Possession of a Controlled Substance,  35§780-113(a)(16).

*See* Criminal Docket, attached as Exhibit F.

On January 23, 2012, Plaintiff pled no contest to all six charges and was sentenced to maximum of ten (10) years in prison. *See* Criminal Docket. Plaintiff is currently incarcerated at SCI-Graterford.

### C.   __Internal investigation__

On or around December 6, 2010, four months after his arrest, Plaintiff made a Citizen Complaint regarding his arrest. Exhibit E.  During the Citizen Complaint investigation, Plaintiff was asked if anything else happened after he was handcuffed and stood up, to which Plaintiff replied that he "just remembers being searched and put in a car." *Id.* Furthermore, Plaintiff could not recall interacting with Sergeant Nestor. *Id.*

The Citizen Complaint investigation, completed on December 13, 2010, found no wrongdoing on the part of Sergeant Nestor. The Inspector specifically documented that Plaintiff lowered his head so as to wipe blood on Sergeant Nestor's shirt and Sergeant Nestor made physical contact with Plaintiff as a reaction to Plaintiff "placing his bloodied head and face onto [Defendant's] person." *Id.* The Investigator found the force to be reasonable because contact with blood is serious threat to officer safety. *Id.* He further found that Plaintiff could have been charged with the additional felony of Aggravated Assault against Defendant. *Id.*

III.   **STANDARD OF REVIEW**

Summary judgment is appropriate if "the pleadings, depositions, Answers to Interrogatories, and admissions on file, together with the Affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56.* Summary judgment may be granted if the moving party persuades the Court that "there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." *Miller v. Ind. Hosp.,* 843 F.2d 139, 143 (3d Cir. 1988). An issue is "genuine" if a reasonable jury could possibly hold in the nonmoving party's favor with regard to that issue. *Anderson v. Liberty Lobby,* 477 U.S. 242, 249 (1986). A fact is "material" only if it could affect the result of suit under governing law. *Id.* Furthermore, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for the purpose of ruling on a motion for summary judgment." *Scott v Harris*, 127 S.Ct. 1769, 1776 (2007).

The party opposing summary judgment must support each essential element of that party's opposition with concrete evidence in the record. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). "If the evidence is merely colorable, where it is not significantly probative, summary judgment may be granted." *Anderson,* 477

U.S. at 249-50. This requirement upholds the "underlying purpose of summary judgment [which] is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense." *Walden v. St. Gobain Corp.*, 323 F.Supp. 2d 637, 642 (E.D. Pa. 2004) (citing *Goodman v. Mead Johnson and Co.*, 554 F.2d, 566, 573 (3d Cir. 1976)).

Where, as here, a reasonable jury could not conclude that Defendant has violated any of Plaintiff's constitutional rights or committed any state torts, the Court must grant summary judgment in Defendant's favor.

## IV.   ARGUMENT

### A.   Excessive force under United States Constitution

In Count I of Plaintiff's Complaint he alleges that Defendant, Sergeant Nestor, is liable for excessive force in violation of the United States Constitution. *See* Exhibit A, ¶¶3-14. Plaintiff's excessive force claim under the United State Constitution must be dismissed.

#### 1.   Qualified immunity

Plaintiff's claims against the Defendant should be dismissed on the basis of qualified immunity.

"Officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would

have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "[T]his immunity is broad in scope." *Curley v. Klem*, 499 F.3d 199, 207 (3d Cir. 2007). "The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law. This accommodation for reasonable error exists because officials should not err always on the side of caution because they fear being sued." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991). "In considering claims of qualified immunity, courts are sensitive to the broad range of reasonable professional judgment accorded law enforcement officials in the § 1983 context." *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 272 (3d Cir. 2000) (internal quotations and citations omitted).

In the instant matter, the actions of Defendant, Sergeant Nestor were objectively reasonable under the circumstances. Plaintiff attempted to wipe blood and other bodily fluids on the Defendant's shirt. Exhibit B, ¶¶9-10; Exhibit E. This constituted an imminent danger to Defendant's health and safety. Exhibit B, ¶11; Exhibit E. Specifically, contact and transfer of blood and body fluids are real and constant threats to officer safety in today's law enforcement field and are taken very seriously. Exhibit B, ¶¶12-13; Exhibit E. In response, Defendant applied reasonable force in pushing Plaintiff away to avoid the imminent threat. Exhibit B, ¶¶14-15; Exhibit E.   As such, Defendant, Sergeant Nestor is entitled to Qualified Immunity.

## 2.    <u>Insufficient evidence to survive this Motion</u>

Plaintiff's excessive force claim must be dismissed because even viewing the facts in a light favorable to Plaintiff, not provided evidence that Defendant acted unreasonably under the circumstances.

To determine whether Defendant used excessive force, the inquiry is whether his actions were objectively reasonable in light of the facts and circumstances with which the Defendant was confronted. *Graham v. Connor*, 490 U.S. 386, 397 (1989). The use of force must be evaluated "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," while recognizing that "police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary." *Id*. at 396-97.

As discussed above, Defendant, Sergeant Nestor's actions were objectively reasonable in light of the facts and circumstances with which he was confronted. The Defendant Sergeant applied reasonable to avoid an imminent threat. Exhibit B, ¶¶14-15; Exhibit E. Moreover, Plaintiff did not fall, exhibit any injuries from the force applied, or make any complaints regarding medical issues and/or Sergeant Nestor's conduct. Exhibit B, ¶16, 19; Exhibit C, 36:11-13; Exhibit E.  The record, therefore, supports that this force was reasonable and justified under the circumstances. Since no reasonable jury could find that Defendant's actions were

unreasonable under the circumstances, Plaintiff's excessive force claim must be dismissed.

### B.   <u>Excessive force under the Pennsylvania Constitution</u>

In Count I of Plaintiff's Complaint he also alleges that Defendant, Sergeant Nestor, is liable for excessive force in violation of the Pennsylvania Constitution. *See* Exhibit A, ¶¶3-14. Any and all claims that Plaintiff has pled under the Pennsylvania Constitution fail as a matter of law and must be dismissed with prejudice.

Courts in Pennsylvania and this Circuit have held that no private cause of action for damages exists for alleged violations of the Pennsylvania Constitution. *Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist.*, 442 F. App'x 681, 687 (3d Cir. 2011) ("No Pennsylvania statute establishes, and no Pennsylvania court has recognized, a private cause of action for damages under the Pennsylvania Constitution."); *Easley v. City of Phila.*, 2015 U.S. Dist. LEXIS 39076, *10-11 (E.D. Pa. Mar. 26, 2015); *Balletta v. Spadoni*, 47 A.3d 183, 193 (Pa. Commw. Ct. 2012) ("In short, there is no Pennsylvania state case law that permits an action for monetary damages based on a claimed violation of the state constitution.").

Accordingly, the Court must dismiss any and all claims for violations of the Pennsylvania Constitution.

### C.   <u>Assault and Battery</u>

In Count II of Plaintiff's Complaint he alleges that Defendant, Sergeant Nestor, is liable under Pennsylvania law for Assault and Battery. *See* Exhibit A, ¶¶15-18. Plaintiff's assault and battery claim must be dismissed.

The Pennsylvania Supreme Court defined these intentional torts as follows:

> Assault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person.

*Renk v. City of Pittsburgh*, 537 Pa. 68, 77, 641 A.2d 289, 294 (1994).

## 1.   <u>Tort Claims Act</u>

Plaintiff's assault and battery claim is barred by Pennsylvania's Political Subdivision Tort Claims Act ("Tort Claims Act"), 42 Pa. Cons. Stat. Ann. §§ 8541 *et seq*. The Tort Claims Act provides to municipal employees acting within the scope of their employment immunity from suit "for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." *Id*.

*It is undisputed that Defendant was acting within the scope of his employment as a York City Police Sergeant at all times during his interaction with Plaintiff. Exhibit B, ¶2; Exhibit E. Plaintiff has not set forth any facts that Defendant acted outside of this scope. Accordingly, Plaintiff's assault and battery claim must be dismissed as a matter of law.*

## 2.   <u>Insufficient evidence to survive this Motion</u>

Assuming, *arguendo*, that assault and battery are not barred by the Tort Claims Act, this claim must nonetheless be dismissed because the record fails to support such a claim.

The Third Circuit Court has ruled that, under Pennsylvania law, police officers are privileged to commit an assault and/or battery pursuant to a lawful arrest, so long as the force is reasonable. *See Groman v. Township of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995) ("Police officers are privileged to commit a battery pursuant to a lawful arrest"); *Mills v. City of Harrisburg*, 350 Fed.Appx. 770, 774 (3d Cir. 2009) ("[Plaintiff's] claims for assault and battery must likewise fail because the existence of probable cause privileged [the officers] to use reasonable force to arrest [Plaintiff].").

Plaintiff does not, and cannot, set forth sufficient facts to establish that the force used by Defendant, Sergeant Nestor was unreasonable. Here, for all the reasons discussed in detail above, the undisputed facts support the determination that Defendant, Sergeant Nestor used a reasonable amount of force against Plaintiff under the circumstances. Accordingly, Plaintiff's claim for assault and battery must be dismissed.

### D.    <u>Punitive Damages Must be Dismissed</u>

Plaintiff seeks punitive damages.  Any and all claims for punitive damages must be dismissed.

Punitive damages may not be awarded against governmental entities or a state actor in his or her official capacity. *Quales v. Borough of Honesdale*, 2011 U.S. Dist. LEXIS 80067, *15 (M.D. Pa. July 22, 2011). *See Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981); *Gregory v. Chehi*, 843 F.2d 111, 120 (3d Cir. 1988)).

Here, it is undisputed that at all times relevant to the facts of this litigation Defendant was acting in his official capacity as a police officer for the City of York. Exhibit B, ¶2; Exhibit E. Accordingly, any and all claims for punitive damages must be dismissed with prejudice.

## V.   **CONCLUSION**

For the foregoing reasons, the Court should grant Defendant's Motion for Summary Judgment, enter judgment in favor of Defendant on all counts, and dismiss any and all claims against Defendant, with prejudice.

Respectfully submitted,

**MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN**

By:_____

JOHN P. GONZALES
Attorney ID No. 71265
2000 Market Street, Suite 2300
Philadelphia, PA  19103
P: (215) 575-2871/F: (215) 575-2871
E-mail:  jpgonzales@mdwcg.com

Attorney for Defendant

Date: July 1, 2015